# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| LINDA JEPSEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 14-CV-914-W-DGK |
| | ) | |
| PAUL VESCOVO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT CLAY COUNTY

Plaintiffs Linda Jepsen ("Jepsen") and Lauren Maberry ("Maberry") allege that Defendants, the Clay County Sheriff's Department ("Clay County") and its sheriff, Paul Vescovo ("Vescovo"), unlawfully investigated them. Plaintiffs sued under 42 U.S.C. § 1983 and for common law invasion of privacy.

Now before the Court is Clay County's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (Doc. 92). Finding that the Complaint fails to state any claim against Clay County, the Court GRANTS the motion.

## Background[1]

James E. Murray ("Murray") owns a private investigation business called Star Investigations, LLC. Matthew Hunter ("Hunter"), a Clay County sheriff's deputy, moonlighted for Star Investigations.

A woman retained Murray to find out who had been anonymously sending her harassing emails. Murray came to suspect Jepsen. After briefly making contact at Jepsen's workplace,

---

[1] This section omits facts properly controverted by Plaintiffs, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to Jepsen and Maberry as the nonmoving parties. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Murray invited her to attend a series of meetings at his office, two of which are relevant here. Before the first meeting, Murray warned her that "it was in [he]r best interest to meet him at his office" (Doc. 93-1 at 77).

Jepsen attended each meeting voluntarily. Present were Murray and Hunter, who parked his patrol vehicle outside and came dressed in his law enforcement uniform. Other people were there, but Hunter was the only law enforcement officer. Hunter introduced himself as a sheriff's deputy, but did not say anything else to Jepsen. Hunter did not threaten or touch Jepsen. He gave her no indication that she was not free to leave. The first meeting lasted two to three hours; the second lasted about an hour.

The second plaintiff, Maberry, came to Murray and Hunter's attention as part of a separate investigation. Murray and Hunter went to Maberry's house to ask her some questions. She was not home, but her young daughter opened the door and gave them Maberry's cell phone number.

Hunter called Maberry at that number, identifying himself as a sheriff's deputy. Maberry was very upset to learn how Hunter obtained her number and that her daughter had spoken to a stranger while home alone. Maberry refused to answer any of Hunter's questions but promised to call him back. She never did.

Jepsen and Maberry filed this lawsuit against Murray, Hunter, Vescovo, Star Investigations, and the Clay County Sheriff's Department. Plaintiffs have since dismissed Murray, Hunter, and Star Investigations.

## Standard

A moving party is entitled to summary judgment on a claim if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

2

law."  Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court makes this determination by viewing the facts in the light most favorable to the nonmoving parties. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

<strong>Analysis</strong>

Clay County seeks summary judgment on each count charged against it: a violation of 42 U.S.C. § 1983 (Count I); and common law invasion of privacy (Count II).

**I.    Because there are no underlying constitutional violations, Clay County is entitled to summary judgment.**

In Count I, Plaintiffs allege a claim for municipal liability under 42 U.S.C. § 1983. Governmental entities are liable under § 1983 for the alleged conduct of their employees "when execution of a government's policy or custom" causes the constitutional deprivation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  However, "neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim."  *Schoettle v. Jefferson Cty.*, 788 F.3d 855, 861–62 (8th Cir. 2015).

Plaintiffs are unclear as to who, exactly, violated their constitutional rights on Clay County's behalf; the complaint suggests it could be either Hunter or Vescovo.[2]  The record and the parties' briefs do not suggest *any* violations of § 1983 that Vescovo may have committed while he served as sheriff.   Rather, Plaintiffs imply that Vescovo is liable for Hunter's actions simply because Vescovo encouraged and sanctioned Hunter's actions as his supervisor.  Because this theory is not cognizable under § 1983, the Court examines only Hunter's conduct.

---

[2] "Only state actors can be held liable under Section 1983."  *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008).  For the purposes of this motion, the Court assumes that Hunter and Vescovo were state actors at all relevant times. *But see* (Pls.' Br. at 19 (Doc. 94-1) ("All parties agree that Matt Hunter and James Murray were private actors when they contacted both Plaintiffs.")).

Plaintiffs claim that Hunter violated their constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution "to be free from an unreasonable search and seizure." First Am. Compl. ¶ 39 (Doc. 56).[3]

The Fourth Amendment prohibits unreasonable "seizures." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012). A consensual encounter between law enforcement and a private citizen is not an unreasonable seizure. *Id.* An encounter is consensual unless, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* This is demonstrated "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* This inquiry requires consideration of "all the circumstances" surrounding the incident. *Id.* at 786. This is an objective standard, turning on what a hypothetical "reasonable person" would have thought, and not on what the particular plaintiff thought. *Id.* at 784.

The Court starts with Jepsen. By the totality of the circumstances, Hunter's actions at his two meetings with her were not so intimidating or threatening that a reasonable person could have believed that she was not free to leave. Granted, Hunter was there in his uniform with a Clay County patrol vehicle, and he told her that he was a deputy sheriff. However, he was the only officer present, and he was present with people who did not represent themselves as law enforcement. He did not tell her that she had to stay there, and she left each meeting after no more than three hours. He did not indicate that she had to answer his questions. He did not restrain her or otherwise use physical force to keep her at either meeting. At most, he was a passive bystander. A reasonable jury would have to conclude that the encounter was consensual,

---

[3] Clay County's brief, in the interest of being thorough, assumes that Plaintiffs are also alleging a violation of their constitutional right to privacy, but argues that summary judgment is still warranted. *See, e.g.*, *NASA v. Nelson*, 562 U.S. 134, 144–46 (2011); *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996). The Court disagrees that the First Amended Complaint raises that as a basis for the § 1983 claim. Therefore, the Court need not address any purported violations of Plaintiffs' constitutional rights to privacy.

4

so there was no Fourth Amendment seizure. *See id.*; *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145–46 (8th Cir. 2007) (finding an encounter consensual where the private citizen voluntarily answered a plain-clothes agent's questions outside, without threat of restraint).

Maberry identifies three incidents in which she claims an unreasonable seizure. First, she argues that her telephone conversation with Hunter was a seizure. Viewing all circumstances surrounding this call, a reasonable jury could conclude only that this call was a consensual encounter. Hunter obviously did not restrain Maberry during this phone call. He did not tell her that she was legally obligated to continue talking to him. He did not threaten her. Therefore, this phone call was not a Fourth Amendment seizure. *See Grant*, 696 F.3d at 784.

Second, she argues that Hunter "seized her unpublished cell phone number." Property is seized "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005) (en banc). Even assuming that Maberry "owns" or otherwise holds a possessory interest in her cell phone number, Hunter did not prevent her from using the number in any way. This was not a seizure.

Third, she argues that Hunter seized her children when he visited their house. Although Maberry may assert her own claims on her own behalf, she cannot assert claims on her minor children's behalf. *See Bower v. Springfield R-12 Sch. Dist.*, 263 F. App'x 542, 542 (8th Cir. 2008). Therefore, this claim fails.

Because there are no valid underlying claims against Hunter, neither Plaintiff can maintain a claim against Clay County as a matter of law. *See Schoettle*, 788 F.3d at 861–62. Therefore, the Court grants summary judgment to Clay County on Count I.

## II. Sovereign immunity protects Clay County from tort liability on Count II.

Count II alleges the state law tort of unreasonable intrusion upon the seclusion of another. *See Sofka v. Thal*, 662 S.W.2d 502, 509 (Mo. 1983) ("One who intentionally intrudes, physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." (quoting Restatement (Second) of Torts § 652B)). Governmental entities like Clay County are immune from state tort claims, subject to automobile-accident and dangerous-condition exceptions not applicable here. *See* Mo. Rev. Stat. § 537.600.1. However, a governmental entity may waive its immunity by purchasing insurance to cover tort claims. *Id.* § 537.610.1. "Because a public entity's liability for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity." *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003) (citing *Burke v. City of St. Louis*, 349 S.W.2d 930 (Mo. 1961)).

Here, the record does not demonstrate that Clay County carries any insurance against tort liability. Therefore, Plaintiffs fail to pierce Clay County's tort immunity. *See id.* Clay County is entitled to judgment as a matter of law on Count II.

### Conclusion

In view of the foregoing, Clay County's motion for summary judgment (Doc. 92) is GRANTED. Because this Order resolves all claims against Clay County, its Motion for Judgment on the Pleadings (Doc. 61) is DENIED as moot.

**IT IS SO ORDERED.**

Date:  March 10, 2016          /s/ Greg Kays
                                            GREG KAYS, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT